*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0130**

In the Matter of the Civil Commitment of: John Howard Thuringer.

**Filed July 28, 2014
Affirmed
Johnson, Judge**

Brown County District Court
File No. 08-PR-13-55

Lori Swanson, Attorney General, Angela Helseth Kiese, Assistant Attorney General, St. Paul, Minnesota; and

Robert D. Hinnenthal, Brown County Attorney, New Ulm, Minnesota (for respondent)

Ryan B. Magnus, Jennifer Thon, Jones and Magnus, Attorneys at Law, Mankato, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Rodenberg, Judge; and Chutich, Judge.

# U N P U B L I S H E D   O P I N I O N

**JOHNSON**, Judge

The district court granted a petition to civilly commit John Howard Thuringer as a sexually dangerous person. We conclude that the district court did not clearly err by finding that Thuringer is highly likely to reoffend. Therefore, we affirm.

# FACTS

In January 2013, Brown County petitioned the district court to civilly commit Thuringer, a 57-year-old man, as a sexually dangerous person (SDP). The petition is based in part on the facts underlying three prosecutions for criminal sexual conduct.[1]

In October 2002, a Nicollet County jury convicted Thuringer of two counts of first-degree criminal sexual conduct based on evidence that he sexually abused a niece in 1997 and 1998, when she was 10 and 11 years old. The district court imposed consecutive sentences of 98 months and 86 months of imprisonment, respectively.

In December 2002, Thuringer entered an *Alford* plea in Nicollet County to two counts of criminal sexual conduct. A conviction of second-degree criminal sexual conduct was based on an allegation that he sexually abused M.P., the daughter of his then-girlfriend, G.P., in 1994, when she was seven years old. A conviction of first-degree criminal sexual conduct was based on an allegation that he sexually abused S.A.S., a friend of M.P., in 1993 or 1994, when she was seven or eight years old. The district court imposed sentences of 57 months and 146 months of imprisonment, respectively, to be served concurrently with the sentences on the prior Nicollet County convictions.

In February 2003, Thuringer entered an *Alford* plea in Blue Earth County to one count of first-degree criminal sexual conduct based on an allegation that he sexually abused R.L.T. in 1997 or 1998, when she was 10 or 11 years old. The district court

---

[1]Between 1981 and 2002, Thuringer also was convicted of numerous non-sexual offenses, including theft by check, false representation, issuance of dishonored checks, issuance of a worthless check, driving after suspension, failure to transfer title, driving without insurance, and driving after revocation.

imposed a sentence of 158 months of imprisonment, to be served concurrently with the sentences on the Nicollet County convictions.

Thuringer's commitment also is based in part on incidents of sexual misconduct that did not result in criminal prosecution. For example, the district court heard evidence that Thuringer secretly watched his minor step-daughters while they undressed. One of Thuringer's former wives, V.N., testified that Thuringer physically and sexually abused her. Another former wife, C.T., testified that Thuringer forced her to engage in sexual acts against her will.

Before trial, the district court appointed two examiners, Paul Reitman, Ph.D., and Mary Kenning, Ph.D., and the county retained Peter Marston, Ph.D., as an expert witness. Each psychologist submitted a written report and testified at trial. Dr. Reitman and Dr. Marston opined that Thuringer meets the criteria for commitment as an SDP. Dr. Kenning opined that Thuringer does not meet the criteria for commitment as an SDP.

A four-day trial was held in June 2013. The district court heard testimony from the three psychologists, Thuringer's former wives, V.N. and C.T.; Thuringer's two former step-daughters; and a former girlfriend, G.B. In November 2013, the district court issued an order in which it found that Thuringer is an SDP, granted the county's petition, and ordered that Thuringer be committed indefinitely to the custody of the commissioner of human services. Thuringer appeals.

**D E C I S I O N**

Thuringer argues that the district court erred by concluding that he satisfies the criteria for commitment as an SDP.

A party petitioning for commitment under the SDP statute must prove the necessary facts by clear and convincing evidence. Minn. Stat. §§ 253B.18, subd. 1(a) (2012), .185, subd. 1(a) (2012). On appeal, this court applies a clear-error standard of review to the district court's findings of fact and reviews the record in the light most favorable to the findings of fact. Minn. R. Civ. P. 52.01; *In re Joelson*, 385 N.W.2d 810, 811 (Minn. 1986); *In re Navratil*, 799 N.W.2d 643, 647 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011). We apply a *de novo* standard of review to the question whether the facts found by the district court satisfy the statutory criteria for commitment, which is a question of law. *In re Linehan* (*Linehan I*), 518 N.W.2d 609, 613 (Minn. 1994).

A person is an SDP if he:

> (1)  has engaged in a course of harmful sexual conduct as defined in [section 253B.02,] subdivision 7a;
>
> (2)  has manifested a sexual, personality, or other mental disorder or dysfunction; and
>
> (3)  as a result, is likely to engage in acts of harmful sexual conduct as defined in subdivision 7a.

Minn. Stat. § 253B.02, subd. 18c(a) (2012). The third requirement is satisfied if a person is "highly likely" to engage in acts of harmful sexual conduct in the future. *In re Ince*, 847 N.W.2d 13, 22 (Minn. 2014). To determine whether a person is highly likely to reoffend, a district court must engage in a "multi-factor analysis." *Id.* at 23-24. The multi-factor analysis includes the following six factors, which are commonly known as the *Linehan* factors:

4

(a) the person's relevant demographic characteristics (*e.g.*, age, education, etc.); (b) the person's history of violent behavior (paying particular attention to recency, severity, and frequency of violent acts); (c) the base rate statistics for violent behavior among individuals of this person's background (*e.g.*, data showing the rate at which rapists recidivate, the correlation between age and criminal sexual activity, etc.); (d) the sources of stress in the environment (cognitive and affective factors which indicate that the person may be predisposed to cope with stress in a violent or nonviolent manner); (e) the similarity of the present or future context to those contexts in which the person has used violence in the past; and (f) the person's record with respect to sex therapy programs.

*Id.* at 22 (quoting *Linehan I*, 518 N.W.2d at 614). The multi-factor analysis also must include any other type of "relevant and reliable evidence," including evidence derived from actuarial risk-assessment tools and structured clinical-judgment tools. *Id.* at 23-24.

In this case, Thuringer does not challenge the district court's findings with respect to the first and second requirements of the SDP statute. He argues only that the district court erred with respect to the third requirement by finding that he is highly likely to reoffend. He argues that the district court erred for three reasons.

First, Thuringer contends that the district court erred by relying on the expert testimony of Dr. Reitman and Dr. Marston because their expert opinions are flawed. He criticizes Dr. Reitman's and Dr. Marston's analyses in several ways. Specifically, he contends that they improperly increased his risk of reoffending by considering the number of his alleged prior victims, his prior failures to observe the terms of his probation, his prior failures to complete sex-offender treatment, and his denial and minimization of his prior offenses.

5

Thuringer essentially asks this court to conduct its own evaluation of the expert witnesses who testified at trial. The supreme court has stated that it is particularly inappropriate for an appellate court to re-weigh the evidence in commitment cases because "the findings of fact rest almost entirely on expert testimony [and] the trial court's evaluation of credibility is of particular significance." *In re Knops*, 536 N.W.2d 616, 620 (Minn. 1995) (citing *Joelson*, 385 N.W.2d at 811). If a district court's findings are supported by the oral testimony or written reports of one or more experts, as they are here, the findings are not clearly erroneous. *Id.* Thus, Thuringer's first contention fails.

Second, Thuringer contends that the district court erred by crediting the expert testimony of Dr. Reitman and Dr. Marston over the expert testimony of Dr. Kenning based on differences in their methods of analysis. The district court found that "the testimony of Dr. Marston and Dr. Reitman is credible and persuasive," in part because "Dr. Marston and Dr. Reitman applied a multi-faceted approach to their assessment of [Thuringer] rather than relying solely on actuarial risk tools to determine risk."

Thuringer contends that the district court erroneously reasoned that the psychologists used different methods of analysis. He asserts that all three experts actually used a similar approach because they used the same tools (namely, the Static-99R, an actuarial risk-assessment tool, and two structured clinical assessments, the Hare PCL-R and SRA-FV). All three experts agreed that the Static-99R and the SRA-FV indicate that sex offenders with relevant characteristics similar to Thuringer's characteristics have a recidivism rate of 12.2% over five years, 19.7% over ten years, and 24.4% over their lifetime. The experts disagreed, however, about the weight to be given

6

to the results of these tools, in part because they placed different amounts of weight on other sources of information. Dr. Reitman also used the Mn-SOST 3.1, the SORAG, and the VRAG tools, and Dr. Marston also used the SVR-20 tool. Dr. Reitman testified that Thuringer's likelihood of reoffending is higher than 24% over his lifetime based on his "clinical history, his number of victims, his unwillingness to complete treatment, his absolute denial that he has any victims and that he is a clinical psychopath." Dr. Reitman testified that he relied in part on the SRA-FV and the Hare PCL-R tools. Dr. Marston also testified that Thuringer's lifetime risk of reoffending sexually is higher than 24%. Dr. Marston based this conclusion on the actuarial tools as well as the following:

> [G]iven the scoring of the Hare [PCL-R], given the diagnosis of sexual deviance, pedophilia and given the other information available to me, the record, the history, so forth, . . . from an empirical standpoint, with not much clinical judgment at all, really, with the scores for the PCL-R Psychopathy Checklist and sexual deviance, I can refer to this empirical record and fairly confidently state to a reasonable degree of certainty, psychological certainty that he's high risk.

In contrast, Dr. Kenning testified that Thuringer's likelihood of reoffending sexually is not higher than 24% over his lifetime and, thus, he is not highly likely to reoffend sexually.

Thuringer's second contention also is inconsistent with the caselaw. We may not review the factual issues *de novo* and, thus, may not second-guess the district court's evaluation of the evidence and reach our own conclusions. *See Knops*, 536 N.W.2d at 620. It is undisputed that all three experts are qualified to give opinion testimony. The district court is permitted to assess which expert is most persuasive and most reliable, and

7

we must defer to such determinations. *See id.*; *Joelson*, 385 N.W.2d at 811; Minn. R. Civ. P. 51.01. Thus, Thuringer's second contention also fails.

Third, Thuringer contends that the district court's application of the *Linehan* factors does not support the conclusion that he is highly likely to reoffend. Thuringer does not contend that the district court misapplied the *Linehan* factors in this case. Rather, he seems to contend that the *Linehan* factors themselves are not an effective means of determining a person's likelihood of reoffending because five of the six factors already are incorporated into the tools that often are used in SDP cases and were used in this case, namely, the Static-99, the SRA-FV, and the Hare PCL-R. Yet he acknowledges that courts are required by the caselaw to analyze the *Linehan* factors. Indeed, the supreme court recently reaffirmed the applicability of the *Linehan* factors, while recognizing the potential for "factor repetition." *Ince*, 847 N.W.2d at 22-24. Thuringer's brief, which was filed before the supreme court issued its opinion in *Ince*, does not make a case-specific argument that the district court committed a factor-repetition error. Thus, Thuringer's third contention fails as well.

In sum, the district court did not clearly err by finding that Thuringer is highly likely to reoffend.

**Affirmed.**